**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, | |
| Plaintiff, | Case No.: 2:16-cv-00390-GMN-NJK |
| vs. | **ORDER** |
| PARADISE COURT HOMEOWNERS ASSOCIATION; NEVADA ASSOCIATION SERVICES, INC.; and SFR INVESTMENTS POOL 1, LLC, | |
| Defendants. | |
| SFR INVESTMENTS POOL 1, LLC, | |
| Counter/Cross Claimant, | |
| vs. | |
| THE BANK OF NEW YORK MELLON, | |
| Counter/Cross Defendants. | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 89), filed by Plaintiff The Bank of New York Mellon ("BNYM"). Defendants Paradise Court Homeowners Association ("HOA") and SFR Investments Pool 1, LLC ("SFR") (collectively "Defendants") filed Responses, (ECF Nos. 92, 94), to which BNYM filed a Reply, (ECF Nos. 100, 101).[1]

Also pending before the Court is HOA's Motion for Summary Judgment, (ECF No. 85). BNYM filed a Response, (ECF No. 91), and HOA filed a Reply, (ECF No. 102).

Also pending before the Court is SFR's Motion for Summary Judgment, (ECF No. 90).

---

[1] BNYM filed two Replies, (ECF Nos. 100, 101), that appear to be identical and are signed on the same date. As such, the Court interprets the Second Reply, (ECF No. 101), as a duplicate filing.

BNYM filed a Response, (ECF No. 93), and SFR filed a Reply, (ECF No. 99). For the reasons discussed herein, BNYM's Motion for Summary Judgment is **DENIED**, and HOA and SFR's Motions for Summary Judgment are **GRANTED**.

I. <u>**BACKGROUND**</u>

BNYM filed its Complaint on February 25, 2016, asserting claims involving the non-judicial foreclosure on real property located at 1150 Grass Pond Place #2, Henderson, Nevada 89015 (the "Property"). (Compl. ¶ 6, ECF No. 1). On August 12, 2005, Carla Saavedra purchased the Property by way of a loan in the amount of $200,864.00 secured by a Deed of Trust ("DOT") recorded August 24, 2005. (*Id.* ¶ 12); (*see* DOT, Ex. A to Pl. Mot. Summ. J. ("MSJ"), ECF No. 89-1).[2] The senior deed of trust was assigned to BNYM via an assignment of deed of trust recorded against the Property on October 18, 2011. (*See* Assignment of DOT, Ex. B to Pl. MSJ, ECF No. 89-2).

HOA, through its agent Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien on December 22, 2011, and a notice of default and election to sell to satisfy the delinquent assessment lien on February 7, 2012. (*See* Notice of Delinquent Assessment Lien, Ex. C to Pl. MSJ, ECF No. 89-3); (*see also* Notice of Default and Election to Sell Under Homeowners Association Lien, Ex. D to Pl. MSJ, ECF No. 89-4). The notice states that the amount due to HOA was $2,662.80, but it did not specify whether that amount includes dues, interest, fees and collection costs in addition to assessments. (Notice of Default and Election to Sell Under Homeowners Association Lien, Ex. D to Pl. MSJ). On August 27, 2012, HOA recorded a notice of foreclosure sale. (*See* Notice of Foreclosure Sale, Ex. E to Pl. MSJ, ECF No. 89-5). On September 21, 2012, SFR purchased the Property at the foreclosure sale pursuant to Nevada Revised Statute ("NRS") § 116.1113. (Compl. ¶ 22).

---

[2] The Court takes judicial notice of the matters of public record attached as exhibits in the respective parties' motions. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

On February 25, 2016, BNYM filed its Complaint asserting the following causes of action against various parties involved in the foreclosure and subsequent sales of the Property: (1) quiet title with a requested remedy of declaratory judgment; (2) breach of NRS § 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*Id.* ¶¶ 24–65).

On June 17, 2016, SFR filed a counterclaim against BNYM and cross-claims against various parties involved in the foreclosure sale for quiet title, slander of title, and preliminary and permanent injunctive relief. (Answer at 8–16, ECF No. 42).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

BNYM argues that summary judgment is warranted because (1) the Ninth Circuit's decision in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017),[3] compels a finding that its DOT survived the sale; (2) it tendered the super-priority amount; (3) the sale was for an inadequate sales price and was unfair and oppressive; and (4) SFR is not a bona fide purchaser. (Pl. Mot. Summ. J. ("MSJ") 6:26–72, ECF No. 89). HOA argues that BNYM's allegations of due process fail because "there were no defects in the Association's foreclosure sale of the property," and there was no duty upon which any of BNYM's claims for breach of NRS §116.113 could lie. (Def. MSJ 5:11, 14:17–18, 14:26–27, ECF No. 85). SFR argues that *Bourne Valley* has been superseded by state law, and that its title to the property is protected because it is a bona fide purchaser. (Def. MSJ 7:1–3, 20:12, ECF No. 90). The Court first turns to the parties' arguments concerning the applicability of *Bourne Valley* to the instant case.

### A. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution." *Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[3] In light of the Nevada Supreme Court's ruling in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018) (en banc), the Court ordered supplemental briefing on "whether a statute that has been found to be facially invalid can be cured by subsequent interpretation by a state supreme court." (Order, ECF No. 103). HOA, BNYM, and SFR timely filed their respective supplemental briefs, (ECF Nos. 105, 106, 107).

opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018). The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS § 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion that NRS § 116.3116 violated a lenders' due process rights was explicitly premised upon the Ninth Circuit's interpretation of state law. Specifically, the Ninth Circuit concluded the notice provisions of NRS § 107.090 are not incorporated into NRS § 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS § 107.090 are incorporated into NRS § 116.31168,

*Bourne Valley* is no longer controlling authority with respect to NRS § 116.3116's notice provisions.

Accordingly, to the extent BNYM seeks to quiet title based upon the Ninth Circuit's holding in *Bourne Valley*, it necessarily fails. The Court thus turns to BNYM's remaining arguments in support of its Motion.

**B.    Tender of the Super-Priority Portion of the HOA Lien**

BNYM claims that it "tendered the super-priority portion of the HOA's lien in advance of the sale, and Paradise Court improperly obstructed BANA's tender." (*Id.* 18:23–25). A "letter offering to pay the superpriority lien amount, once that amount [is] determined, [is] not sufficient to constitute a valid tender." *Bank of Am., N.A. v. TRP Fund IV, LLC*, 422 P.3d 712 (Nev. 2018).

Here, BNYM sent a letter requesting a ledger from NAS and offered to pay the super-priority amount. (Pl. MSJ 14:24–15:1); (*see* Letter at 5–6, Ex. F to Pl. MSJ, ECF No. 89-6). BNYM does not assert it sent payment to HOA. Because BNYM only declared its willingness to pay and did not present actual payment, there was no tender of the super-priority amount that prevented HOA from extinguishing BNYM's deed of trust through foreclosure. *See Nationstar Mortg., LLC v. Melvin Grp., LLC*, 422 P.3d 711 (Nev. 2018) ("Absent evidence that the HOA or its agent affirmatively thwarted appellants' efforts to tender the superpriority amount, the alleged futility of any such effort does not establish unfairness or oppression."); *see also Bank of New York Mellon v. S. Highlands Cmty. Ass'n*, No. 2-16-cv-1177-JCM-VCF, 2018 WL 1021333, (D. Nev. Feb. 22, 2018) (finding that BNYM did not offer any evidence as to tender when BNYM/its predecessor-in-interest sent a letter requesting the amount for the nine-months' worth of assessments owed).

## C. Equitable Grounds for Setting Aside the Sale

The Nevada Supreme Court recently held that the commercial reasonableness standard of Uniform Commercial Code Article 9 does not apply in the context of HOA foreclosure sales of real property. *Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 644 (Nev. 2017). The relevant inquiry, rather, is "whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 646. "[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 648. The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

Here, BNYM argues that the sales price was inadequate because the price represented less than 7% of the fair market value. (Pl. MSJ 3:13–14). In addition to inadequacy of price, BNYM asserts that unfairness and oppression are established because it is undisputed that (1) HOA represented in its CC&Rs its lien was junior to BNYM's DOT, (2) NAS failed to identify the super-priority amount of HOA's lien or even provide a ledger from which BNYM could calculate the amount owed, and (3) the effect of HOA's sale was legally uncertain. (*Id.* 3:17–20). The Court addresses each argument in turn.

### 1. Content of Notices

BNYM asserts that HOA's "representations in its CC&Rs contributed to a grossly inadequate price because it represented to the public its lien was junior to [BNYM] and enforcement of its lien would not extinguish [BNYM's]. In other words, purchasers would base their bid with the understanding they were acquiring the property subject to a senior lien." (*Id.* 17:20–23). BNYM's claim that HOA's misrepresentations in the CC&Rs caused the low sales price because they chilled bidding is not supported by evidence. Moreover, these conclusory statements alone do not survive summary judgment. *See Wilmington Tr., N.A. v. Las*

*Vegas Rental & Repair, LLC Series 69*, 408 P.3d 557 (Nev. 2017) (finding that the district court correctly declined to set aside the sale based on the inadequacy of sales price when no evidence that bidding was actually chilled was presented). Here, because BNYM has not provided any evidence to show that the CC&Rs contributed to the inadequate price, BNYM's first argument does not provide sufficient evidence of unfairness or oppression to obtain equitable relief from the foreclosure sale even accepting that the sale price was inadequate.

With respect to HOA's failure to specify the super-priority portion of the lien in the foreclosure notice, this, too, is not enough to constitute fraud, unfairness, or oppression. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the super-priority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, absent additional evidence suggesting fraud, oppression, or unfairness, HOA's failure to explicitly state the super-priority portion of the lien does not justify setting aside the sale.

### 2. Legal Uncertainty

BNYM claims that the sale was unfair because "all parties faced massive legal uncertainty at the time of the HOA foreclosure sale." (Pl. MSJ, 19:12–13). However, the uncertainty as to whether a super-priority lien could be foreclosed non-judicially in the first place does not point to any affirmative action taken by Defendants that would constitute fraud, oppression, or unfairness. Accordingly, because BNYM has not introduced evidence or

*Vegas Rental & Repair, LLC Series 69*, 408 P.3d 557 (Nev. 2017) (finding that the district court correctly declined to set aside the sale based on the inadequacy of sales price when no evidence that bidding was actually chilled was presented). Here, because BNYM has not provided any evidence to show that the CC&Rs contributed to the inadequate price, BNYM's first argument does not provide sufficient evidence of unfairness or oppression to obtain equitable relief from the foreclosure sale even accepting that the sale price was inadequate.

With respect to HOA's failure to specify the super-priority portion of the lien in the foreclosure notice, this, too, is not enough to constitute fraud, unfairness, or oppression. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the super-priority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, absent additional evidence suggesting fraud, oppression, or unfairness, HOA's failure to explicitly state the super-priority portion of the lien does not justify setting aside the sale.

### 2. Legal Uncertainty

BNYM claims that the sale was unfair because "all parties faced massive legal uncertainty at the time of the HOA foreclosure sale." (Pl. MSJ, 19:12–13). However, the uncertainty as to whether a super-priority lien could be foreclosed non-judicially in the first place does not point to any affirmative action taken by Defendants that would constitute fraud, oppression, or unfairness. Accordingly, because BNYM has not introduced evidence or

articulated alternative equitable grounds to establish unfairness, the Court finds that summary judgment is warranted in HOA and SFR's favor.

### D. Bona Fide Purchaser

Because BNYM has failed to raise any genuine issue of material fact with respect to its equitable challenges to the foreclosure sale, the Court need not address whether SFR was a bona fide purchaser for value. *See Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.4 (Nev. Ct. App. Apr. 17, 2017); *Bank of Am., N.A. v. BTK Props., LLC*, No. 2:16-cv-1558-JCM-PAL, 2018 WL 1073133, at *9 (D. Nev. Feb. 27, 2018).

In light of the foregoing, the Court finds that BNYM has failed to raise a genuine dispute so as to preclude summary judgment in favor of Defendants on its quiet title claim. Further, as SFR has met its burden of demonstrating that there is no genuine dispute of material fact as to its quiet title claim and is entitled to judgment on that issue, the Court grants SFR's Motion for Summary Judgment, (ECF No. 90), on its claim for quiet title/declaratory relief. However, given the well-settled rule that a cause of action for injunctive relief is not a stand-alone claim, the Court will dismiss SFR's claim for a preliminary and permanent injunction. The Court will also grant HOA's Motion for Summary Judgment, (ECF No. 85), as to BNYM's quiet title/declaratory relief claim. Thus, Defendants are entitled to a declaratory judgment that BNYM's deed of trust was extinguished pursuant to the properly conducted foreclosure sale where SFR purchased the Property.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that BNYM's Motion for Summary Judgment, (ECF No. 89), is **DENIED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 85), is **GRANTED**.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 90), is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that SFR's claims for slander of title and injunctive relief are **DISMISSED**.[4]

The Clerk of Court shall enter judgment accordingly.

**DATED** this __27__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[4] The Court dismisses the claim for slander of title because SFR represents in its Motion for Summary Judgment that it will dismiss the slander of title claim against BNYM if the Court grants quiet title in its favor. (*See* Def. MSJ 3:23, ECF No. 90).